IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLES W. JACKSON, JR., and )
VICKIE JACKSON, )
)
Plaintiffs, )
)
v. ) 1:12CV1205
)
MERSCORP, INC., et al., )
)
Defendants. )

MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on a Motion to Dismiss [Doc. #34] filed by Defendants

Aurora Loan Services, LLC ("Defendant Aurora"), MERSCORP, Inc. ("Defendant MERS"),

and U.S. Bank, N.A., as trustee for Structured Asset Securities Corporation Mortgage Pass-

Through Certificates, Series 2007-GEL 2 ("Defendant U.S. Bank") (collectively "Defendants"

or "moving Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

I.      FACTS, CLAIMS, AND PROCEDURAL HISTORY

In March 1996, Plaintiffs Charles W. Jackson, Jr. and Vickie Jackson ("Plaintiffs"),

husband and wife, refinanced the loan on their home located at 710 Pineburr Place, Durham,

---

[1] On August 23, 2013, the Clerk issued an Entry of Default as to the remaining Defendant, Atlantic Mortgage
Service, Inc. ("Defendant Atlantic"), for failing to answer or otherwise file a response to Plaintiffs' Amended
Complaint. (Entry of Default [Doc. #44].) Plaintiffs allege in their Amended Complaint that this Defendant
is now dissolved. (Am. Compl. [Doc. #20] ¶ 3.) The District Judge entered an Order [Doc. #48] denying
Plaintiffs' Motion for Default Judgment against Defendant Atlantic without prejudice to Plaintiffs' renewal of
the motion after the liability of the remaining Defendants has been determined.

North Carolina (the "property") with Defendant Atlantic Mortgage Service, Inc. ("Defendant Atlantic").[1] (Am. Compl. [Doc. #20] ¶1, 21 & Ex. C.)[2] Plaintiffs executed a promissory note (the "note") in the amount of $114,021.00, which was secured by a deed of trust on the property. (Id. ¶ 21 & Ex. C.) Defendant Atlantic "represented to [] Plaintiffs that the refinance was for a [Veterans Affairs] loan," and the deed of trust reads, "THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT."[3] (Id. ¶ 22-23 & Ex. C (emphasis in original).) Plaintiffs now believe that the loan was not an approved Veterans Affairs ("VA") loan. (Id. ¶ 24.)

Plaintiffs' deed of trust subsequently underwent a series of assignments. Defendant Atlantic assigned the debt to Apollo Mortgage & Financial Services, Inc. (id., Ex. C at 7), who in turn assigned it to Homeside Lending, Inc. ("Homeside") (id. ¶ 26 & Ex. C at 3). The promissory note indicates indorsements which correspond with the assignments of the deed of trust. (Id. ¶ 48 & Ex. H at 5.) The most recent indorsement indicates that Homeside indorsed the note in blank. (Id. ¶ 48; Def.'s Br., [Doc. #41] Ex. A at 4.[4]) In February 2006,

---

[1] For purposes of Defendants' Motion to Dismiss, the Court will accept as true the facts as alleged in Plaintiffs' Complaint. See Blackburn v. Trs. of Guilford Tech. Cmty. Coll., 733 F. Supp. 2d 659, 661 (M.D.N.C. 2010).

[2] On a motion to dismiss, "the Court may consider documents attached to the Complaint, as long as those documents are integral to the Complaint and authentic." Fisher v. Winston-Salem Police Dep't, 28 F. Supp. 3d 526, 529 (M.D.N.C. 2014); see also Federal Rule of Civil Procedure 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Plaintiffs attached several letters and documents to their Complaint indicating various assignments of the deed of trust and note. Because Plaintiffs rely on these documents in their Complaint, and because Defendants do not dispute their authenticity, the Court may properly consider the attachments in deciding this Motion.

[3] In Plaintiffs' Response to Defendants' Motion, they state that VA loans "are backed by the government and offer forbearance for those who are experiencing financial difficulties . . . ." (Pl.'s Br. [Doc. #38] at 10.)

[4] The Court may also permissibly consider the promissory note attached to Defendants' reply brief because Plaintiffs referenced and relied on this document in their Complaint (Am Compl. [Doc. #20] ¶¶ 48, 49, 53). See HQM, Ltd. V. Hatfield, 71 F. Supp. 2d 500, 502 (D. Md. 1999) (stating that in ruling on a motion to

2

an Appointment of Substitute Trustee was filed with the Durham County register of deeds reflecting Mortgage Electronic Registration Systems, Inc.[5] as the owner and holder of the note secured by the deed of trust. (Am Compl. [Doc. #20] ¶ 28 & Ex. D.) On May 5, 2009, another Appointment of Substitute Trustee was filed indicating that Defendant Aurora was the owner and holder of Plaintiffs' note. (Id. ¶ 44 & Ex. E.)

In 2006, Plaintiffs filed for Chapter 13 bankruptcy. (Id. ¶ 29.) According to the Amended Complaint (hereinafter "Complaint"), following bankruptcy, Defendant Aurora began foreclosure proceedings and Plaintiffs subsequently filed another petition for Chapter 13 bankruptcy. (Id. ¶¶ 30-31.) The property was ultimately discharged from bankruptcy in 2009, and Plaintiffs then entered into an "internal trial modification program" with Defendant Aurora, pursuant to which Aurora would review whether Plaintiffs qualified for a permanent loan modification at the end of the trial period. (Id. ¶¶ 32-34.) Despite Plaintiffs making all payments on time during the trial period, Defendant Aurora thereafter accelerated the debt and demanded "a balloon payment" from Plaintiffs. (Id. ¶ 36.) The parties subsequently entered into two additional three-month trial modification periods, during which time Plaintiffs made all payments on time. (Id. ¶¶ 37-38, 40-41.) Nevertheless, Defendant Aurora accelerated the debt before the completion of the second trial period. (Id. ¶ 39.) Following

---

dismiss, the court would consider letters that the defendant attached to his reply brief because the plaintiffs referenced and relied on them in their complaint).

[5] Plaintiffs do not explain the relationship between MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc. While Plaintiffs only name MERSCORP, Inc. as a defendant in the caption of the Complaint, within the Complaint they refer to MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc. interchangeably. (See Am Compl. [Doc. #20] ¶ 4.) For the purposes of resolving this Motion, the Court will refer to both as "Defendant MERS."

the third trial period, Defendant Aurora sent Plaintiffs "a letter of non-qualification for permanent modification." (Id. ¶ 42.)

In December 2009, the law firm of Kellam and Pettit, P.A., sent Plaintiffs a letter notifying them that foreclosure proceedings would be instituted against them and that Defendant Aurora was the creditor to whom the debt was owed. (Id. ¶ 45 & Ex. F.) Thereafter, in January 2010, Defendant Aurora sent Plaintiffs a letter claiming that it was the servicer of the loan now owned by Defendant U.S. Bank, in trust. (Id. ¶ 46 & Ex. G.) In the foreclosure proceeding, the Clerk of Court did not sign the order of foreclosure "because of issues with the chain of title of the Note," and on February 4, 2010, Defendant Aurora voluntarily dismissed the foreclosure proceeding. (Id. at ¶ 50-51 & Ex. I.)

Plaintiffs subsequently commenced this action raising the following claims: Count I – fraudulent misrepresentation; Count II – negligent supervision; Count III – fraud; Count IV – conspiracy to commit fraud by the creation, operation, and use of MERS system; Count V – violations of the Real Estate Settlement Procedures Act; Count VI – reformation; Count VII – slander of title; Count VIII – quiet title; Count IX – violations of the Fair Debt Collection and Practices Act; Count X – violations of the North Carolina Unfair and Deceptive Trade Practices Act; and Count XI – fraud through securitization.

In the present Motion, Defendants argue that Plaintiffs have failed to state any claim upon which relief may be granted. The Court notes that Defendant Atlantic, for whom the Clerk has issued an Entry of Default, is not a party to this Motion. Accordingly, Plaintiffs' claims against Defendant Atlantic are not before the Court and are not the subject of this Recommendation.

## II.    DISCUSSION

### A.  Standard

In considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (internal citations omitted).  Thus, dismissal of a complaint is proper where a plaintiff's factual allegations fail to produce an inference of liability strong enough to "nudge[] [the plaintiff's] claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 547.[6]

### B.  Plaintiffs' allegations regarding the fraudulent nature of the MERS system

Scattered throughout Plaintiffs' Complaint are allegations regarding the fraudulent nature of the mortgage registration system employed by Defendant MERS ("the MERS

---

[6]  The Court notes that at multiple points in their brief, Plaintiffs contend that a complaint should not be dismissed "unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint." (Pl's Br. [Doc. #38] at 3, 19.) Plaintiffs further contend that the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), supports this proposition.  However, the Supreme Court in Twombly actually *disavowed* this standard.  Twombly, 550 U.S. at 562-63 ("We could go on, but there is no need to pile up further citations to show that Conley's "no set of facts" language has been questioned, criticized, and explained away long enough. . . . [A]fter puzzling the profession for 50 years, this famous observation has earned its retirement.").

system"). These allegations form the basis of several of Plaintiffs' claims, and the Court will discuss them here before turning to each of Plaintiffs' individual claims.

In Rosa v. Mortg. Elec. Sys., Inc., 821 F. Supp. 2d 423 (D. Mass. 2011), the court provided a useful explanation of the MERS system:

> MERS was created to facilitate the mortgage finance industry and to alleviate the "slow and burdensome recording processes" required for transferring and assigning residential mortgages. MERS administers an electronic registry to track the transfer of ownership interests and servicing rights in mortgage loans, serving as mortgagee of record and holding legal title to mortgages in a nominee capacity. MERS has several members, known as member firms, which subscribe to MERS and pay fees for MERS' services and access to MERS' system. MERS is named as the mortgagee of record in the mortgage so that beneficial ownership and servicing rights of the note may be transferred among MERS members without the need to publicly record such assignments; instead assignments of the note are tracked by MERS' electronic system. MERS will typically remain mortgagee and act as agent for any holders of the promissory note who are MERS members. Once beneficial ownership of the note is transferred to a non-MERS member, MERS will assign the mortgage and the assignment will be recorded with the registry of deeds. In order to facilitate the assignment of mortgages, MERS typically designates signing authority to employees of its member firms, pursuant to corporate resolutions.

821 F. Supp. 2d at 429 (internal quotations and citations omitted). In recent years, the MERS system has been the subject of much debate and litigation, with one of the primary objections being that MERS circumvents public recording requirements and conceals the true owners of an interest in a property. See Joy v. MERSCORP, Inc., No. 5:10-CV-218-FL, 2012 WL 7804203, at *12 (E.D.N.C. May 15, 2012) (stating, "The role and authority of MERS has been the focus of many lawsuits throughout the nation over the past few years."), report and recommendation adopted in part, rejected in part, 935 F. Supp. 2d 848 (E.D.N.C. 2013); see also Cervantes v. Countrywide Home Loans, Inc., No. CV 09-517-PHX-JAT, 2009 WL 3157160, at *10 (D. Ariz. Sept. 24, 2009) (discussing the plaintiffs' allegation that "the MERS

system is a means of circumventing the public recording requirements."), aff'd, 656 F.3d 1034 (9th Cir. 2011).

Recently, several courts have considered and rejected claims rooted in the alleged fraudulent nature of the MERS system. For example, in Joy, 935 F. Supp. 2d at 862, the court found that "allegations that loan documents and assignments were invalid, unauthorized, or otherwise defective . . . because of deficiencies in the MERS system . . . are not sufficient to establish the false statement element of a fraud claim." Likewise, in Porterfield v. JP Morgan Chase Bank, Nat. Ass'n, No. 4:13-CV-00128-BO, 2013 WL 5755499 (E.D.N.C. 2013), the court dismissed the plaintiff's fraud claims, stating:

> [T]he plaintiff has failed to point to, and this Court's research has failed to uncover, any case finding that MERS violates North Carolina law whereas several other courts have held that MERS is lawful and accordingly has the authority to assign its rights under deeds of trust. . . . Accordingly, plaintiff's claims for fraudulent misrepresentation and fraud by use of MERS fail and are dismissed with prejudice.

2013 WL 5755499, at *4. See also Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041-42 (9th Cir. 2011) (affirming district court's dismissal of the plaintiffs' fraud claims based on the MERS system); In re Mortg. Elec. Registration Sys. (MERS) Litig., 744 F. Supp. 2d 1018, 1029 (D. Ariz. 2010) (finding that "[t]he MERS system is not fraudulent, and MERS has not committed any fraud." (emphasis omitted)).

In the instant case, Plaintiffs allege that MERS "was created . . . to undermine and eviscerate long-standing principles of real property law." (Am. Compl. [Doc. #20] ¶ 6.) They contend that "[t]he structure of MERS defrauds homeowners by concealing their nature in transactions as well as the true identity of lenders . . . ." (Pl.'s Br. [Doc. #38] at 4.) Plaintiffs identify MERS as a "sham beneficiary in the original deeds of trust." (Am. Compl. [Doc. #20]

7

¶ 102.) Plaintiffs argue that "it was and is a materially misrepresented fact as to who owned the loan at all times throughout the chain of title." (Pl.'s Br. [Doc. #38] at 7.)

The Court concurs with the conclusions of the above-cited cases and finds that Plaintiffs have failed to adequately allege that the MERS system is inherently fraudulent.[7] Moreover, Plaintiffs have not sufficiently alleged that their loan was ever even subject to the MERS system they criticize. The only allegation describing Defendant MERS' involvement in the ownership and assignment of Plaintiffs' loan states that in February 2006, Defendant MERS was reflected as the owner and holder of the note secured by the deed of trust. (Am. Compl. [Doc. #20] ¶ 28.) Plaintiffs' allegations make clear that Defendant MERS was both the owner and holder of the note, which would mean that the loan was not a typical "MERS loan." Further, while Plaintiffs do allege that Defendants Aurora and U.S. Bank were "members of and participants in the MERS system," (Am. Compl. [Doc. #20] ¶ 99), Plaintiffs never allege that Defendant MERS was a "beneficiary" or "nominee" under the deed of trust when the note was owned by Aurora and, later, U.S. Bank. Accordingly, Plaintiffs have failed to adequately allege that their loan was ever a "MERS loan" which implicated the litany of concerns they raise.

With the foregoing in mind, the Court now turns to Plaintiffs' individual claims.

C. Count I–Fraudulent Misrepresentation

In Count I, Plaintiffs allege that "[t]he deceptive acts of [Defendants] Aurora,

---

[7] To be clear, the Court has not resolved potential state law issues as to the impact of the MERS system in any particular foreclosure proceeding, or even larger issues of state regulation in this area; instead, the Court concludes, as have other courts to consider the matter, that allegations regarding the MERS system, standing alone, do not establish a false statement to support a claim for fraud.

MERSCORP, and Atlantic resulted in a multitude of misrepresentations, including but not limited to the true identity of the Lender, the misleading misrepresentation as to the Mortgagee, and to the existence of the loan itself." (Am. Compl. [Doc. #20] ¶ 58.) More specifically, Plaintiffs contend that Defendant Aurora represented to them that undergoing a trial loan modification period would allow them to eventually enter into a permanent loan modification. (Id. ¶ 63.) No permanent loan modification was offered, however, and Defendant Aurora attempted to foreclose on Plaintiffs' home. (Id. ¶ 65.) Plaintiffs contend that Defendant Aurora never intended to offer Plaintiffs a permanent loan modification. (Id. ¶ 66.)

Under North Carolina law, to state a claim for fraud, Plaintiffs must allege: "(1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which the injured person reasonably relies upon; (5) resulting in damage to the injured party." Interstate Narrow Fabrics, Inc. v. Century USA, Inc., 218 F.R.D. 455, 466 (M.D.N.C. 2003) (citing Pearce v. Am. Def. Life Ins. Co., 343 S.E.2d 174, 178 (N.C. 1986)). Additionally, Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Under this Rule, a party generally must identify the time, place, and contents of the allegedly false statements, the identity of the person making the representation, and what was obtained as a result of the fraudulent misrepresentation. Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 195 (M.D.N.C. 1997).

Plaintiffs have not satisfied the heightened pleading requirements of Rule 9(b). Regarding any alleged fraudulent misrepresentations made by Defendant Aurora, Plaintiffs

have not identified the person or persons who allegedly represented, on behalf of Defendant Aurora, that undergoing trial modification periods would allow Plaintiffs to eventually enter into a permanent loan modification. Plaintiffs also have not alleged the time that such a representation was made, nor the place where it was made. Further, Plaintiffs have not stated what, if anything, Defendant Aurora obtained as a result of its misrepresentation. Finally, there is no allegation that Defendant Aurora represented that a successful completion of a trial loan modification period would necessarily result in a permanent loan modification. Rather, Plaintiffs merely allege that Defendant Aurora stated that it "would review Plaintiffs for qualification into a permanent modification at the end of the three month trial." (Am. Compl. [Doc. #20] ¶ 34.) Therefore, Plaintiffs have failed to adequately state a claim for fraudulent misrepresentation against Defendant Aurora.

Plaintiffs also name Defendant MERS in Count I. As with Defendant Aurora, Plaintiffs have not identified any particular person making a misrepresentation on behalf of this Defendant, nor have they alleged the place and time of any misrepresentation. Therefore, Plaintiffs have failed to state a claim of fraudulent misrepresentation against Defendant MERS. To the extent that Plaintiffs base this claim on the alleged fraudulent nature of the MERS system, it will be dismissed for failing to adequately state a claim. See supra Part II.B.

All claims in Count I should therefore be dismissed as to all of the moving Defendants.

### D. Count II–Negligent Supervision

In Count II, Plaintiffs allege that Defendant Aurora negligently supervised its agents when the agents allegedly "forc[ed] the Plaintiffs into multiple trial modifications without intent to enroll the Plaintiffs into a permanent modification." (Am. Compl. [Doc. #20] ¶ 70.)

To state a claim for negligent supervision in North Carolina, a plaintiff must allege: "(1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency. Smith v. First Union Nat'l Bank, 202 F.3d 234, 250 (4th Cir. 2000). Here, Plaintiffs contend only that Defendant Aurora's agents forced them into multiple trial modifications without an intent to enroll them into a permanent modification program. Plaintiffs do not identify any specific employee or agent, do not identify a tortious act, and do not allege any facts to allow the Court to draw the reasonable inference that Defendant Aurora knew or had reason to know of an employee's incompetency. Plaintiffs' allegation that "Defendants knew or should have known that their employees and/or agents were acting unlawfully," (Am. Compl. [Doc. #20] ¶ 72), is a legal conclusion which the Court need not accept as true. See Iqbal, 556 U.S. at 678.

Therefore, all claims in Count II should be dismissed as to all moving Defendants.

E.  Count III–Fraud

In Count III, Plaintiffs allege generally that Defendants have fraudulently treated their note as a negotiable instrument and, therefore, have unlawfully asserted a debt against them. (Am. Compl. [Doc. #20] ¶¶ 85-88.) The note is not negotiable, according to Plaintiffs, because it contains instructions or undertakings other than the payment of money; namely, the obligation that the borrower tell the lender if he opts to prepay and the instruction that the lender send notices to the borrower in a certain manner. (Id. ¶¶ 90-91.)

In support of their argument, Plaintiffs rely upon North Carolina General Statute § 25-3-104(a), which adopted the Uniform Commercial Code's ("UCC") definition of a negotiable

instrument. See Porterfield, 2013 WL 5755499, at *3 (noting that North Carolina adopted the UCC's definition of a negotiable instrument). The statute states, in pertinent part, that a negotiable instrument "means an unconditional promise or order to pay a fixed amount of money . . . if it: . . . (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money . . . ." N.C. Gen. Stat. § 25-3-104(a).

Courts interpreting the UCC definition of "negotiable instrument" have soundly rejected the argument that an instrument becomes non-negotiable when it contains instructions for the borrower to give prepayment notice to the lender. In Porterfield, 2013 WL 5755499, at *3, the court noted that "[c]ourts in [New Jersey, South Carolina, and Pennsylvania] have held that plaintiff's right to prepay the Note and the provisions regarding prepayment notice contained in the Note do not destroy its negotiability." The court stated:

> "The right of [borrowers], under the note, to prepay part of the principal does not constitute an 'additional undertaking or instruction' that adversely affects the negotiability of the note. Quite the opposite, the right of prepayment is a voluntary option that [borrowers] may elect to exercise solely at their discretion. Indeed, such an allowance confers a benefit, not a burden, upon [borrowers], who can freely choose to decline the opportunity. The fact that [borrowers] must notify the lender in the event they opt for prepayment imposes no additional liability on them and is not a condition placed on [borrowers'] promise to pay. Rather, notification is simply a requirement of the exercise of the right of prepayment which, as noted, [borrowers] are free to reject. This requirement does not render the note in issue non-negotiable."

Id. (quoting HSBC Bank USA, NA v. Gouda, 2010 WL 5128666, at *3 (N.J. Sup. Ct. App. Div. Dec. 17, 2010)). The Court finds this reasoning persuasive, and similarly concludes that the right to prepay the note and the provisions regarding prepayment notice do not render Plaintiffs' note non-negotiable.

Plaintiffs also allege that the note is non-negotiable based on the requirement that "the lender send any notices that must be given to the borrower pursuant to the terms of the subject note by either delivering it or mailing it by first class mail." (Am. Compl. [Doc. #20] ¶ 91.) In its brief in opposition to Defendants' Motion, Plaintiffs fail to address how this instruction renders the note non-negotiable, and the Court can perceive no reason why this instruction would do so. This instruction requires the lender, not the borrower, to act. North Carolina General Statute § 25-3-104(a) only concerns itself with additional instructions to a debtor, and, thus, this limited instruction to the lender does not transform a note into a non-negotiable instrument. Therefore, Plaintiffs have failed to adequately state a claim for fraud on this basis.

Moreover, because Plaintiffs' claim is based in fraud, they must comply with Federal Rule of Civil Procedure 9(b) and be particular in their description of the fraudulent acts. They have not done so. As noted previously, an essential element of fraud is "a false representation or concealment of a material fact." Interstate Narrow Fabrics, Inc., 218 F.R.D. at 466. Here, Defendants' alleged false representation was "the present holder of the note." (Am. Compl. [Doc. #20] ¶ 94.) Plaintiffs have not alleged the substance of the representation or how it was false, and Plaintiffs have not identified anyone that made such a representation, or the time and place of such a representation.

Accordingly, all claims in Count III against the moving Defendants should be dismissed.

### F. Count IV–Conspiracy to Commit Fraud

Plaintiffs allege in Count IV that Defendants have conspired to commit fraud by participating in the MERS system. (Am. Compl. [Doc. #20] ¶ 98-99.) The ultimate goal of

the conspiracy, according to Plaintiffs, was to deprive Plaintiffs of property through the foreclosure process. (Am. Compl. ¶¶ 117-18.)

To state a claim for civil conspiracy under North Carolina law, Plaintiffs must allege: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the coconspirators; and (4) pursuant to a common scheme." Privette v. Univ. of N. Carolina, 385 S.E.2d 185, 193 (N.C. Ct. App. 1989). "[I]n North Carolina, there is no independent cause of action for civil conspiracy; the claim can arise only where there is an underlying claim for unlawful conduct." Byrd v. Hopson, 265 F. Supp. 2d 594, 599 (W.D.N.C. 2003).

As previously discussed, Plaintiffs have failed to adequately allege that their loan was subject to the MERS system or that the system is inherently fraudulent. See supra Part II.B. Plaintiffs have also failed to state a claim for fraud or fraudulent misrepresentation. Because Plaintiffs have failed to state a claim for fraud, Plaintiffs have failed to state a claim for civil conspiracy to commit fraud.

All claims in Count IV against the moving Defendants should be dismissed.

G. Count V–RESPA

In Count V, Plaintiffs allege that Defendants have violated the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq., ("RESPA") "by causing to be made numerous Assignments and Transfers of the Note and Deed of Trust without having given the proper notice to Plaintiffs within the proper time frame," and by "failing to inform Plaintiffs of any transfers of the loan servicing of their loan." (Am. Compl. [Doc. #20] ¶¶ 122-23.)

Defendants contend that Plaintiffs' RESPA claims should be dismissed for failing to sufficiently allege actual damages. To adequately plead a RESPA claim, courts require plaintiffs to allege damages resulting from a RESPA violation. See Champion v. Bank of Am., N.A., No. 5:13CV272-BR, 2014 WL 25582, at *4 (E.D.N.C. Jan. 2, 2014) ("Without any allegation of actual damages due to the violations, plaintiff has failed to state a RESPA claim."); Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc., 858 F. Supp. 2d 561 (E.D.N.C. 2012) ("Plaintiffs [] do not state a claim under 12 U.S.C. § 2605(e) as Plaintiffs fail to allege any pecuniary loss attributable to the RESPA violation."). "[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages." Champion, 2014 WL 25582, at *3 (internal quotation omitted).

Here, Plaintiffs allege no actual damages resulting from a RESPA violation. (See Am. Compl. [Doc. #20] ¶¶ 121-24.) In addition, Plaintiffs bring this claim generally against all "Defendants," without specifying what transfers were made that required notice that a particular Defendant failed to provide. Moreover, Plaintiffs in their Response did not respond to Defendants' Motion to Dismiss as to the RESPA claim, and it therefore appears that the Motion to Dismiss is unopposed as to this claim.

Accordingly, all claims in Count V should be dismissed against all moving Defendants.

### H. Count VI–Reformation

Plaintiffs seek reformation of their 1996 loan agreement with Defendant Atlantic based on the allegation that it "does not embody the parties' actual, original agreement." (Id. ¶ 127.) Plaintiffs allege that the parties "intended to agree to a loan which was approved as a VA

Loan," and that the loan was not so approved. (Id. ¶¶ 126, 128.) Plaintiffs seek to have "clear title restored" and request that the Court order "the Clerk of County to release the mortgage and strike all mortgage assignments filed in the name of the Defendants as to the Plaintiffs." (Id. ¶ 130.)

The moving Defendants argue that this claim should be dismissed because the moving Defendants are not referenced in Count VI and because any impropriety in the 1996 loan closing with Defendant Atlantic would not affect their interest in the property. (Def.'s Br. [Doc. #35] at 17-18.) In their response brief, Plaintiffs do not address Defendants' arguments for dismissal of this claim.

Analyzing a similar claim of reformation asserted against MERS and other defendants, a court in the Eastern District of North Carolina recently stated:

> Reformation is an equitable remedy that is used to reframe written instruments only "where, through mutual mistake ... the written instrument fails to embody the parties' actual, original agreement." *Lawyers Title Ins. Co. v. Golf Links Development Corp.,* 87 F.Supp.2d 505, 512 (W.D.N.C.1999). In order to plead such mutual mistake "the party seeking reformation must show that the parties to the contract intended to agree to terms that are different from those reflected in the writing." *Cross v. Bragg,* 329 Fed. App'x. 443, 454 (4th Cir.2009)(citing Restatement (Second) of Contracts § 152 (1979)).

Smallwood v. Irwin Mortg. Co., No. 5:12-CV-47-BO, 2013 WL 4735877, at *4 (E.D.N.C. Sept. 3, 2013). In this case, as to the moving Defendants, Plaintiffs do not allege any mutual mistake or fraud related to the origination of their loan. Further, Plaintiffs offer no explanation of how any Defendant other than Defendant Atlantic could be held accountable for what they allege was a misunderstanding with Defendant Atlantic.

Moreover, the Court notes that even as to Defendant Atlantic, the factual allegations in the Complaint would not appear to support a claim of mutual mistake, nor has Plaintiff

stated with particularity the circumstances constituting fraud or mistake involving Defendant Atlantic. Plaintiff has not identified the time, place, and contents of the allegedly false statements, the identity of the person making the representation, or what was obtained as a result of the fraudulent misrepresentation. However, the Court need not address that issue further because, as noted above, Plaintiffs in their Response did not respond to Defendants' Motion to Dismiss as to this claim, and it therefore appears that the Motion to Dismiss is unopposed as to this claim.

Therefore, Plaintiffs' claim for reformation as to the moving Defendants should be dismissed.

## I. Count VII–Slander of Title

Plaintiffs allege in Count VII that Defendants slandered their title to property by "knowingly and maliciously communicat[ing], in writing, a false statement which [had] the effect of disparaging the Plaintiffs' title to property." (Am. Compl. [Doc. #20] ¶ 132.) To establish a claim of slander of title, Plaintiffs must show: "(1) the uttering of slanderous words in regard to the title of someone's property; (2) the falsity of the words; (3) malice; and (4) special damages." Broughton v. McClatchy Newspapers, Inc., 588 S.E.2d 20, 30 (N.C. Ct. App. 2003).

Plaintiffs' claim is based on their contention that any transfer of the note was "wrongful and invalid," and, thus, "[a]ny publication of an ownership interest in any of Plaintiffs' properties is . . . false." (Am. Compl. [Doc. #20] ¶ 137-39.) The Court has already concluded that Plaintiffs failed to adequately allege that any transfer of the note was invalid, finding the note to be a valid negotiable instrument. See supra Part II.E. Accordingly, Plaintiffs do not

17

sufficiently allege that any ownership interest in the property published by Defendants was false. See Porterfield, 2013 WL 5755499, at *6 (stating that "Plaintiff bases her claim for slander of title on the legal conclusion that the Note is not negotiable. This Court has rejected that conclusion [] and is not required to accept plaintiff's unreasonable conclusions as true when considering a 12(b)(6) motion to dismiss.").

Moreover, Plaintiffs fail to forecast sufficient evidence as to the element of malice. "Malice is established by showing that the statement regarding title was not made in 'good faith,' or that it was made without 'probable cause for the defendant's belief,' or that defendant 'could not honestly have entertained such belief.'" Joy, 935 F. Supp. 2d at 865 (quoting Cardon v. McConnell, 27 S.E. 109 (N.C. 1897)). Plaintiffs allege that Defendants acted with malice during the attempted foreclosure "because the Defendants knew or acted with reckless disregard as to their right to foreclose." (Am. Compl. [Doc. #20] ¶ 145.)

To the extent Plaintiffs argue that Defendants acted with malice because they knew or should have known the note was non-negotiable, the Court has previously dispensed with that argument. Plaintiffs further argue that Defendants acted with malice because the note was not indorsed in favor of Defendants, and thus they had no right to assert any ownership interest. (Pl.'s Br. [Doc. #38] at 17-18.) As alleged in the Complaint, the most recent indorsement indicates that Homeside indorsed the note in blank. (Am Compl. [Doc. #20] ¶ 48.) "'When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed.'" Steele v. Capital One Home Loans, LLC, Nos. 3:13-CV-704-RJC-DSC, 3:13-CV-705-RJC-DSC, 2014 WL 3748928, at *8 (W.D.N.C. July 30, 2014) (adopting recommendation of Mag. J.) (quoting N.C. Gen.

Stat. § 25-3-205(b)), aff'd 594 F. App'x 215 (4th Cir. 2015). Plaintiffs do not allege that the note was ever specially indorsed subsequent to Homeside's blank indorsement, and, thus, whoever possessed the note had legal right to enforce it. See In re Robinson, No. 07-02146-8-JRL, 2011 WL 5854905, at *3 (Bankr. E.D.N.C. Nov. 22, 2011) (finding that a party was "clearly the holder of the note because it is in possession of the original note indorsed in blank."). Accordingly, Plaintiffs' argument that Defendant acted maliciously by claiming ownership of the note in the absence of a special indorsement is unavailing.

Finally, Plaintiffs argue that Defendants had no probable cause to believe they were the rightful owner of the note because the "[l]oan was not assumable without the approval of the Department of Veterans Affairs," as stated at the top of the deed of trust. (Pl.'s Br. [Doc. #38] at 17-18.) However, this limitation refers only "to the transfer of Plaintiff[s'] obligations under the mortgage." Chapman v. Mortg. Elec. Registration Sys., Inc., No 1:13-CV-2305-RWS, 2013 WL 4855259, at *3 (N.D. Ga. Sept. 11, 2013). In this regard, as noted in Chapman,

> [V]eteran-borrowers lack an express or implied right of action in federal court to enforce the duties of private lenders under the VA statute. . . . . Further, the Security Deed states "this loan is not assumable without the approval of the Department of Veterans Affairs or its authorized agent." Assumption of the Loan refers to the transfer of Plaintiff's obligations under the mortgage. See Black's Law Dictionary (6th ed. 1990) (". . . if [one] assumes the mortgage, he binds himself to mortgagor to pay the mortgage and to fulfill all other terms and conditions of mortgage"). The assumption clause does not limit MERS's authority to assign the Security Deed or the power of MERS's assigns to exercise the Power of Sale.

Id. Likewise in the present case, Plaintiffs fail to allege how the restriction on the *assumption* of the loan limited Defendants' rights to *assign* the loan. Accordingly, Plaintiffs have not pled sufficient facts giving rise to a plausible inference of malice.

19

Therefore, Plaintiffs' claim for slander of title as to the moving Defendants should be dismissed.

## J.  Count VIII–Quiet Title

Plaintiffs allege they are "entitled to have their property . . . quieted in [their] names until and unless some party comes forward in this litigation who has a right to enforce the loans upon their house free and clear of all encumbrances."  (Am. Compl. [Doc. #20] ¶ 150.)  As the bases for this claim, Plaintiffs echo their prior allegations that: 1) "[t]he originator of the loan employed a means by which MERS and the Defendants could insulate themselves from liability for the breach of contract," (id. ¶ 152); 2) Defendants "have no contractual relationship with the Plaintiffs because the loan was never verified as a VA Loan which was a material fact in the acceptance of the loan by the Plaintiffs," (id. ¶ 153); and 3) "[a]s the loan did not represent the terms agreed to by both parties, the contract should be reformed and any transfers to future parties in this matter should be considered void," (id. ¶ 154).

"An action [to quiet title] may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims . . . ."  N.C. Gen. Stat. § 41-10.  This cause of action exists to "free the land of the cloud resting upon it and make its title clear and indisputable, so that it may enter the channels of commerce and trade unfettered and without the handicap of suspicion . . . ."  Kelley v. CitiFinancial Servs. Inc., 696 S.E.2d 775, 779 (N.C. Ct. App. 2010) (internal quotation omitted).  "Where a plaintiff acknowledges a deed of trust she can only prevail on her quiet title claim if she establishes that it is void."  Smallwood, 2013 WL 4735877, at *5 (citing Kelley, 696 S.E.2d 775); see also Joy, 935 F. Supp. 2d at 867 (dismissing quiet title claim where the

"plaintiff [had] not alleged any facts providing a basis for removing the deed of trust as an encumbrance on his property . . . ."); Porterfield, 2013 WL 5755499, at *6 (dismissing the plaintiff's quiet title claim where it was "based on the erroneous assertions that 'no party . . . has [a] right to enforce the loans upon plaintiff's house free and clear of all encumbrances' and '[t]he defendants have no contractual relationship with the plaintiff.'").

Here, Plaintiffs have failed to adequately allege that the deed of trust or note is void. The Court has previously found insufficient Plaintiffs' allegations: (1) regarding the fraudulent nature of the MERS system, see supra Part II.B; (2) that the moving Defendants never became rightful owners of the note, see supra Part II.E; and (3) that the moving Defendants are liable for any alleged fraud or mutual mistake in the origination of the loan, see supra Part II.H. Again, Plaintiffs' assertions that Defendants never had a legal right to enforce the note are legal conclusions which are devoid of any underlying factual allegations.

Accordingly, Plaintiffs' quiet title claim should be dismissed as to all moving Defendants.

### K. Count IX–Fair Debt Collection and Practices Act

Plaintiffs allege in Count IX that Defendant Aurora violated the Fair Debt Collection and Practices Act, 15 U.S.C. § 1692 ("FDCPA"). (Am. Compl. [Doc. #20] ¶¶ 159-79.) "To prevail on a FDCPA claim, a plaintiff must sufficiently allege that (1) he was the object of collection activity arising from a consumer debt as defined by the FDCPA, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or omission prohibited by the FDCPA." Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011).

Plaintiffs' allegations that Defendant Aurora "engaged in an act or omission prohibited by the FDCPA" are again based on the purported unlawful nature of the debt and Defendants' alleged misrepresentations as to the ownership of the debt. (Am. Compl. [Doc. #20] ¶¶ 162-73.) However, as set out above, Plaintiffs assertions that the debt owed was unlawful or that Defendants made any false representations as to the debt are simply legal conclusions unsupported by sufficient factual allegations. See Joy, 935 F. Supp. 2d at 859-60 (rejecting FDCPA claim to the extent the claims "are premised on the belief that MERS lacked authority to assign the deed of trust and that [assignee] lacked standing and the capacity to foreclose," and further concluding that "where plaintiff's assertions are based on a lack of documentation to substantiate an assignment or transfer of the note or deed of trust, they do not provide a factual basis for plaintiff's FDCPA claims"). Accordingly, Plaintiffs have not stated a valid claim against Defendant Aurora under the FDCPA.

Therefore, Plaintiffs' FDCPA claims against Defendant Aurora should be dismissed.

L. Count X–Unfair and Deceptive Trade Practices

Plaintiffs allege in Count X that Defendant Aurora committed unfair and deceptive acts by collecting payments during the trial loan modification periods while never intending to allow Plaintiffs to enter into a permanent modification and then initiating foreclosure proceedings. (Am. Compl. [Doc. #20] ¶ 187-94.)

To state a claim under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 et seq., Plaintiffs must establish three elements: (1) an unfair or deceptive act or practice, or an unfair method of competition; (2) in or affecting commerce; and (3) proximately causing actual injury to plaintiff. See AG Sys., Inc. v. United

Decorative Plastics Corp., 55 F.3d 970, 974 (4th Cir. 1995). "A practice is unfair if it is unethical and unscrupulous, and it is deceptive if it has a tendency to deceive." Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2011).

Plaintiffs' UDTPA claim is based on the same allegations underlying Plaintiffs' fraudulent misrepresentation claim asserted in Count I, that is, Plaintiffs contend that Defendant Aurora misrepresented that Plaintiffs could enter a permanent loan modification upon the successful completion of the trial modification period. However, for the same reasons discussed as to Count I, this contentions fails to state a claim for relief. See Porterfield, 2013 WL 5755499, at *5 (citing B & F Slosman v. Sonopress, Inc., 557 S.E.2d 176, 182 (N.C. Ct. App. 2001)); see also Joy, 935 F. Supp. 2d at 863 (finding that "the same analysis that supported dismissal of plaintiff's fraud claim also supports dismissal of his UDTPA claim."). Thus, dismissal of Plaintiffs' UDTPA claim is justified for the same reasons as previously set out with respect to Plaintiffs' fraudulent misrepresentation claim—namely, that Plaintiffs have failed to allege sufficient facts that Defendant Aurora ever represented that successful completion of the trial period would necessarily result in a permanent loan modification. (See Am. Compl. [Doc. #20] ¶ 34 (alleging that under the trial modification, "[Defendant] Aurora *would review Plaintiffs for qualification* into a permanent modification at the end of the three month trial.") (emphasis added).)

M. Count XI–Fraud through Securitization

Plaintiffs' claim for Fraud through Securitization is based on the allegation that because the loan was "securitized into stock," the loan ceased to exist as such and the note was extinguished. (Am. Compl. [Doc. #20] ¶¶ 199-203.) Thus, according to Plaintiffs, Defendant

Aurora's representation that Defendant U.S. Bank was the holder of the debt and its attempt to foreclose upon their loan involved a false representation because there was, in fact, no debt. (Id. ¶¶ 204-07.) Plaintiffs allege that Defendant Aurora "knew or should have known that this representation was false." (Id. ¶ 210.)

Plaintiffs have presented no authority to support their legal theory that because their note became securitized, their indebtedness was extinguished. As the court noted in Porterfield, "'Plaintiff's argument—that Defendant's securitization of his loan relieved him of his obligation to pay on the note—has been consistently rejected . . . nationwide.'" 2013 WL 5755499, at *5 (quoting Batchelor v. Wells Fargo Bank, N.A., 2013 WL 1499583, at *3 (E.D. Mich. Mar. 15, 2013)). The securitization of a debt "merely creates a separate contract, distinct from the Plaintiffs' debt obligations under the Note, and does not change the relationship of the parties in any way." Bhatti v. Guild Mortg. Co., No. C11-0480JLR, 2011 WL 6300229, at *5 (W.D. Wash. Dec. 16, 2011); see also Steele, 2014 WL 3748928, at *7 (finding that the plaintiffs' argument that the defendants had no power to enforce the note or deed of trust following mortgage securitization "[had] no merit").

Moreover, Plaintiffs have presented no legal or factual basis to establish a claim for fraud based on the facts alleged. Therefore, this claim should be dismissed against all moving Defendants.

## III. CONCLUSION

For all of the reasons set out above, the Court will recommend that Defendants' Motion to Dismiss be granted and that Plaintiffs' claims against Defendants MERS, Aurora, and U.S. Bank be dismissed. If adopted, only Plaintiffs' claims against defaulting Defendant

Atlantic will remain.  However, given that Defendant Atlantic has dissolved, it is not clear if Plaintiffs still wish to proceed on the default.  Therefore, Plaintiffs should be given 30 days to file a renewed Motion for Default Judgment.  Any such Motion should address the effect of the Court's resolution of the claims against Defendants MERS, Aurora, and U.S. Bank.  If Plaintiffs fail to file a renewed Motion for Default Judgment, the claims against Defendant Atlantic should also be dismissed and the case should be closed.

IT IS THEREFORE RECOMMENDED that Defendants' Motion to Dismiss [Doc. #34] be GRANTED and Plaintiffs' Amended Complaint be DISMISSED as to Defendants MERS, Aurora, and U.S. Bank.  If adopted, only Plaintiffs' claims against defaulting Defendant Atlantic will remain, and Plaintiffs should be given 30 days to file a renewed Motion for Default Judgment, and if no such Motion is filed, the claims against Defendant Atlantic should also be dismissed.

This, the 30th day of September, 2015.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge